UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-114 (ADM/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) |
| v. | ) GOVERNMENT'S OPPOSITION TO ) DEFENDANT'S MOTION FOR A ) *FRANKS* HEARING |
| EDDIE LEE GRASTY, | ) ) |
| Defendant. | ) |

The United States of America, by and through its attorneys Andrew M. Luger, United States Attorney for the District of Minnesota, and Daniel W. Bobier, Assistant United States Attorney, hereby submits its opposition to the defendant's motion for a *Franks* hearing. Dkt. No. 27.

## INTRODUCTION

This is a felon in possession case. The charge arises out of a 911 call placed by a woman, A.V., who reported that the father of her child—the defendant, Eddie Lee Grasty—had beat her, brandished a gun, and threatened to kill her. St. Paul Police Department officers responded to the call that evening at A.V.'s apartment, by which time the defendant had left. Officers eventually left A.V.'s apartment that evening and learned that the defendant had several prior felony convictions and several active felony warrants, including for violent crimes. SPPD officers returned to A.V.'s apartment the next morning and met with A.V. when she answered the door. After speaking with officers briefly, A.V. told officers—who were still standing the common hallway outside the apartment—that she intended to step back into the apartment

1

just long enough to retrieve her infant son. She turned, leaving the apartment front door open and making no attempt to close it, and reentered the apartment. Without entering the apartment, the officers held the door ajar (as A.V. had left it and to prevent it from closing on its own). A.V. returned to the front door moments later with her son. She confirmed for the officers that the defendant was inside the apartment and, after A.V. followed officers a safe distance away from the apartment, the defendant surrendered as officers called to him from outside the apartment. Officers then held the apartment—still without entering it—until they obtained a warrant to search the premises. With the warrant in hand, officers conducted the search and found a black Glock 43, 9mm pistol, and baggies of pills that field-tested positive for fentanyl.

The defendant now moves the Court to hold a *Franks* hearing on the basis of certain purported misrepresentations or omissions in the search warrant affidavit. Because the challenged affidavit on its face does not contain material misrepresentations and because neither they nor the purported omissions are material to probable cause, the defendant has failed to carry his exacting burden of a "substantial preliminary showing," and the request for a *Franks* hearing should be denied.

## ARGUMENT

To merit a *Franks* hearing, a defendant must make a "substantial preliminary showing" in two parts.

First, the defendant must show that "a false statement knowing and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *United States v. Lucca*, 377 F.3d 927, 931 (8th Cir. 2004) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). That requirement "is not lightly met," *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010), meaning that a *Franks* hearing "must be denied" unless the defendant "makes a *strong* initial showing of deliberate falsehood or reckless disregard of the truth," *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (cleaned up) (emphasis added). "[M]ere allegations" of deliberate or reckless falsehoods are insufficient. *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (citation omitted). So are showings of negligence or innocent mistake. *Franks*, 438 U.S. at 171; *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010). Rather, to satisfy the first *Franks* requirement, a defendant must show that "the affiant … entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. Clapp,* 46 F.3d 795, 801 n.6 (8th Cir. 1995); *Arnold*, 725 F.3d at 898 (challenges to purported omissions not sufficient absent showing of "deliberate or reckless falsehood").

Second, even if the defendant makes a substantial showing of a knowingly false statement "intended to mislead," he must also show that, "if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *Arnold*, 725 F.3d at 898.  Where the defendant complains not of inaccurate statements in the affidavit but of omissions of purportedly material

information, the defendant must show that the inclusion of such information "would have *negated* probable cause." *United States v. Finley*, 612 F.3d 998, 1003 (8th Cir. 2010).

Here, Plaintiff contends a *Franks* hearing is warranted for essentially two reasons, namely: (a) purported misrepresentations concerning the purpose and manner of law enforcement's return visit to A.V.'s apartment; and (b) purported omissions regarding discussion between law enforcement and A.V. prior to the defendant's surrender from within the apartment and the officers' application for the search warrant.[1] The defendant fails, however, to carry his burden to show that any of the statements in (or purported omissions from) the affidavit are knowingly false. He also fails to show that correction of such purported errors in the affidavit would have negated probable cause. Because the defendant cannot carry his burden with respect to each prong, much less both, the Court should deny the motion and its request for hearing.

I.      **Purpose and Manner of Officers' Return Visit to A.V.'s Apartment**

The defendant first takes issue with the introductory line of the affidavit, which reads in relevant part: "St. Paul Police Sergeant Arturo Lopez responded to

---

[1] The defendant also contends that law enforcement "unlawfully" "entered" the apartment when, without crossing the threshold, they held the front door ajar after A.V. answered and opened it, told officers she would return to them momentarily after retrieving her son, and went back into the apartment while leaving the door open and without making any attempt to close it. For the reasons discussed in the government's response to the defendant's motion to suppress, no illegal entry occurred here—neither as a matter of fact nor of law. The government incorporates here the arguments presented in that response but, because these contentions are not relevant to the *Franks* inquiry, the government does not further address them here.

[A.V.'s apartment] for a follow up interview with the victim of a domestic abuse incident that occurred [the night prior.]" Affidavit, Dkt. 27-2 at 2. The defendant suggests this is misleading because other officers accompanied Sgt. Lopez, Dkt. 27 at 4, and because—the defendant asserts—Lopez's "primary purpose" was not to conduct a follow-up interview, but to search for the defendant, *id.* at 4-5.

First, this line is not misleading in either respect. The affiant never claims that Sgt. Lopez visited the apartment alone; to the contrary, the affidavit states that "St. Paul Police Officers"—multiple—"on scene surrounded the apartment complex and stood by the apartment door[.]" Dkt. 27-2 at 2. The affiant also does not claim what Sgt. Lopez's "primary purpose" was when he arrived on scene. That language appears for the first time in the defendant's brief. The affidavit's actual description—that Sgt. Lopez arrived there "for a follow up interview"—is true. Dkt. 27-2 at 2. The night prior, SPPD had responded to a domestic violence call at that apartment and the victim, A.V., had reported that the defendant had beaten her and threatened her life with a gun. *Id.* The defendant was not present in the apartment by the time on March 17 that the officers arrived. *Id.* An obvious lead to find him the following day was contact with A.V., an interview that also allowed officers to confirm her continued safety in light of the death threats she received from the defendant just the night before. The affidavit's description is neither false nor misleading.

Second, even if the affidavit were misleading in either respect, the defendant still could not make his required substantial showing because neither of these statements is material to the finding of probable cause. Whether Sgt. Lopez visited

5

the victim's apartment on March 18 all alone or accompanied by other St. Paul Police Department officers has no bearing on whether probable cause existed to believe the apartment contained, as the affidavit states, "firearms or firearm indicia." Dkt. 27-2 at 1. So too for the affiant's description of Sgt. Lopez's initial purpose in making that visit. The defendant cites no case law to the contrary and makes no attempt to explain the materiality of either purported misleading statement.

## II.  A.V.'s Purported "Unwillingness" to Exit Her Apartment

The defendant's second point occupies the rest of his motion. He does not dispute that the affidavit accurately recounts that law enforcement met with A.V. in the doorway of her apartment and that she soon thereafter left the apartment with the officers. The defendant objects, however, that the affidavit does not detail each part of the conversation between officers and A.V. that led to her stepping out of her apartment. He asserts that without such details, the affidavit presents a "false narrative" that A.V. "willingly removed herself" from the apartment. Dkt. 27 at 5. He is wrong.

The defendant makes no attempt to show that any such details were omitted by the affiant with the "intent to defraud"—as he must, to warrant a hearing. *Arnold*, 725 F.3d at 898. Nor could he.[2] This is a difficult burden for a defendant to carry

---

[2] In point of fact, many of the defendant's assertions on this score—e.g., that the officers "misled [A.V.] about having a warrant" and that "[a]t no point before [A.V. left the apartment] did A.V. ever say that Mr. Grasty was in the apartment"—are not accurate. The officers had several active warrants for the defendant's arrest. And, as the body camera footage the defendant invokes shows, within the first few minutes of the officers' discussion with A.V. at the front door to her apartment, she confirms that the defendant is inside. One officer, whispering, tells A.V. that he knows the defendant is inside the apartment and that the defendant has hurt A.V. before; in response, she nods several times.

6

absent "independent evidence" of "bad motive" or "reckless disregard." *See United States v. Martin,* 615 F.2d 318, 329 (5th Cir. 1980). The defendant provides no such evidence here.

What is more, none of these details weighs in any way on the determination of probable cause to search the premises. The chief facts in the affidavit providing probable cause are that the defendant had "grabbed a black handgun and pointed it at [A.V.] during [a] physical assault," that the defendant had told A.V. while doing so "I'm going to kill you," and that, based on that assault having occurred in the apartment the night prior, the affiant had reason to believe that "firearms or firearm indicia" would be found within. Dkt. 27-2 at 1-2. All those details are accurately represented in the affidavit, and those more than suffice for probable cause to search. While the defendant may wish that the affidavit had detailed each part of the conversation between law enforcement and A.V. while the former persuaded the latter not to try to conceal or protect the defendant within the apartment, the defendant has not and cannot show that the inclusion of such details in the affidavit "would have *negated* probable cause." *United States v. Finley*, 612 F.3d 998, 1003 (8th Cir. 2010). The same is true of the defendant's assertion that the officers, after A.V. told them at first that the defendant was not in the apartment, responded that they still intended to search the apartment. The officers' discussion with A.V. at her front door reflects their ultimately successful efforts to persuade A.V. to extract herself and her infant son from a possible hostage situation—something they told her explicitly. But nothing in that discussion is germane to the *Franks* inquiry. Even if the affidavit

7

had included a verbatim transcript of that entire discussion, the affidavit still would have articulated probable cause to believe the gun used in the commission of the assault was in the apartment.

## CONCLUSION

A *Franks* hearing may be held only where the defendant has made a substantial showing of a knowingly false statement or omission intended to mislead that, if corrected in the affidavit, would have negated probable cause. The defendant has not come close to meeting that burden, so the Court should deny his request for a hearing.

Date: June 21, 2024

Respectfully submitted,

ANDREW M. LUGER
United States Attorney

BY:   */s/ Daniel W. Bobier*
DANIEL W. BOBIER
Assistant U.S. Attorney